UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JORDAN B.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

22-CV-06534-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Jordan B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 12) is denied, and defendant's motion (Dkt. No. 15) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on September 5, 2013, with an alleged onset date of March 27, 2013. (Administrative Transcript ["Tr."] 217-22). The application was initially denied on November 4, 2013. (Tr. 134). Plaintiff filed a written request for hearing on November 12, 2013. (Tr. 146-48).

Following an administrative hearing before an Administrative Law Judge ("ALJ"), Plaintiff was found not to be disabled. (Tr. 5-22). The Appeals Council denied review. (Tr. 1-4). Plaintiff appealed to this Court and on August 28, 2018, the case was remanded to the Commissioner.

On remand, an ALJ again found Plaintiff not to be disabled. (Tr. 1076-96). Plaintiff again appealed to this Court and on August 8, 2021, the case was again remanded.

On remand, a telephonic administrative hearing was held before ALJ Connor O'Brien, on April 14, 2022, at which Plaintiff appeared, with counsel. (Tr. 1597-1634). A vocational expert ("VE") also testified. On August 4, 2022, the ALJ issued an unfavorable decision. (Tr. 1561-96). This appeal followed.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful

activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past

relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 5, 2013, his application filing date. (Tr. 1566). At step two, the ALJ determined that Plaintiff's severe impairments were: degenerative disc disease and spondylosis of the lumbar spine; degenerative joint disease of the right shoulder; obesity, depression; and anxiety with panic disorder. (Tr. 1566-67). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Tr. 1567-69).

Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform light work,[3] except:

> he can occasionally reach overhead with his right arm, and frequently reach in other directions, handle, and finger with his right dominant hand; he can occasionally stoop, crouch, balance, climb stairs or ramps, and kneel; he cannot climb a rope, ladder or scaffold; he can perform simple, routine tasks, adjust to occasional changes in work setting and make occasional work-related decisions; he cannot interact with the public, and he can work in an environment in which work is primarily performed alone with only occasional supervision.

(Tr. 1569-86). At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 1586). Finally, at step five, the ALJ relied on the testimony of a VE and found that, given his RFC and vocational characteristics, Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 1586-87). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 1587).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded, because the ALJ: (1) failed to consider properly numerous disability-supporting medical opinions without considering the consistency between these opinions; and (2) failed to support her step five finding by not eliciting testimony from the VE explaining the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") as it related to the reaching requirements in all of the representative jobs identified. The Court finds both these arguments unpersuasive.

---

[3] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*; SSR 83-10, 1983 WL 31251.

*Medical Opinion Evidence*

Plaintiff argues that remand is warranted because the ALJ, in assigning various medical opinions little weight, did not discuss the consistency between them. Plaintiff specifically references the opinions from treating physicians Jaswant Jain, M.D., Donald Symer, M.D., and Shahab Dian, M.D., that Plaintiff had significant limitations in his ability to walk and stand. (citing Tr. 951 (stand and walk 1-2 hours), 1168 (same), 1180 (same), 1980 (same), 1990 (same), 2004 ("occasionally" stand and walk), 2008 (same). However, under the applicable regulations, "consistency" is just one factor used in weighing medical opinions. *See* 20 C.F.R. § 416.927(c). Moreover, this factor concerns a medical opinion's consistency with the "record as a whole." 20 C.F.R. § 416.927(c)(4). ("[g]enerally, the more consistent a medical opinion is with the *record as a whole*, the more weight [an ALJ] will give to that medical opinion") (emphasis added)). As such, an ALJ need not explicitly compare each opinion. Here, consistent with the regulations, as explained below, the ALJ found that, despite these physicians having similar opinions, their highly-restrictive limitations, namely concerning standing and walking, were unsupported by and inconsistent with the medical evidence, including their own treatment records. (*See* Tr. 1577-80). The ALJ therefore assigned these opinions little weight. Moreover, to the extent that these opinions were from treating sources, the ALJ's rationale here amounted to "'good reasons'—i.e., reasons supported by substantial evidence in record—for" assigning them little weight. *See Schillo v. Kijakazi*, 31 F.4th 64, 74-75, 79 (2d Cir. 2022) (even though the ALJ did not methodically go through the factors of the treating physician rule, so long as the ALJ gave "good reasons" for the assigned weight, then the procedural error is harmless) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)).

The ALJ found Drs. Jain, Symer, and Dian provided "little in the way of support" for their opinions, and they were "not consistent with the overall record." (*See* Tr. 1578, 1580). An ALJ should consider the quality of the explanation and degree of objective support that a source provides for their opinion. 20 C.F.R. § 416.927(c)(3). Additionally, generally, the more consistent a medical opinion is with the record as a whole, the more weight an ALJ will give to that opinion. 20 C.F.R. § 416.927(c)(4). Specifically, as Plaintiff pointed out, Drs. Jain, Symer, and Dian opined Plaintiff opined Plaintiff had significant limitations in his ability to walk and stand. (citing Tr. 951 (stand and walk 1-2 hours), 1168 (same), 1180 (same), 1980 (same), 1990 (same), 2004 ("occasionally" stand and walk), 2008 (same)). However, as the ALJ explained, Drs. Jain, Symer, and Dian's observations did not support their highly-restrictive limitations. (*See* Tr. 1578, 1580). Specifically, Dr. Jain had largely normal physical examinations, with findings of normal gait, heel and toe walk, extremities, and neurologic signs. (Tr. 1580 (citing Tr. 1888-89)); (*see also* Tr. 1876-77, 1892-93, 1895-96 (all noting Dr. Jain's similar normal findings)). Similarly, Dr. Symer observed normal leg strength, reflexes, and sensation. (Tr. 1580 (citing Tr. 1903)); (*see also* Tr. 1984 (Dr. Symer observed normal range of motion and no tenderness), 2399 (Dr. Symer noted Plaintiff denied weakness, numbness, or gait disturbance)). Likewise, Dr. Dian documented normal gait, no sensory deficit, and no weakness. (Tr. 1578 (citing Tr. 2280-82)); (*see also* Tr. 1992, 1996, 2004, 2008 (all noting Dr. Dian observations of normal gait)).

Further, in discounting Drs. Jain, Symer, and Dian's overly restrictive opinions, the ALJ discussed other physicians' largely normal objective findings. (*See* Tr. 1580). For instance, a spine specialist physician observed full strength and normal muscle tone. (Tr.

1580 (citing Tr. 2160-61)). At that visit, Plaintiff also denied weakness and numbness (Tr. 2158) and demonstrated negative straight leg raise test (suggestive of no nerve root irritation) and normal reflexes (Tr. 2160-61). Further, as the ALJ explained, consultative internist Harbinder Toor, M.D., documented similar findings, such as normal strength, sensation, and gait. (Tr. 1580 (citing Tr. 1906-07)). Thus, the ALJ provided "good reasons" for discounting various treating physicians' opinions, namely from Drs. Jain, Symer, and Dian, including that they were unsupported by and inconsistent with the medical evidence.

Plaintiff also points to Dr. Toor's opinions to support his argument that he had greater standing and walking restrictions than the ALJ found. First, Plaintiff points to Dr. Toor's 2012 opinion that Plaintiff had "very limited" (i.e., "1-2 hours") ability to stand and walk. (citing Tr. 1162). But this opinion was rendered more than a year before the relevant period, and as explained above, objective findings, such as normal gait, documented during the relevant period are inconsistent with such an extreme limitation. Next, Plaintiff points to Dr. Toor's 2021 opinion that Plaintiff had "moderate" limitations in standing and walking "for a long time." (citing Tr. 1907). However, the ALJ gave this opinion little weight because it was inconsistent with Dr. Toor's observations, such as normal gait, heel and two walk, stance, and leg strength. (Tr. 1585 (citing Tr. 1906-07)); *see* 20 C.F.R. § 416.927.

In sum, the ALJ considered the medical opinion evidence in determining Plaintiff retained an RFC for a range of light work. (*See* Tr. 1569-86). As explained above, the ALJ based his RFC finding on substantial evidence, including objective medical findings, conservative and/or lack of treatment, and activities, as well as medical opinion evidence.

*Conflict Between the VE's Testimony and the DOT*

At step five of the sequential analysis, the ALJ relied on the VE's testimony that an individual with Plaintiff's RFC and vocational characteristics could perform work as a merchandise marker, office helper, and inspector and hand packager. (Tr. 1587, 1629-30). Plaintiff argues that the VE's testimony conflicts with the DOT, because an individual with Plaintiff's RFC was limited to occasional overhead reaching with the right arm and the jobs identified by the VE require frequent reaching, as per the DOT.[4]  Plaintiff contends that remand is warranted because the ALJ failed to reconcile this apparent conflict. However, Plaintiff has not shown that there is an apparent conflict between the VE's testimony and the DOT.

In support of his argument, Plaintiff cites to *Lockwood v. Comm. Of Soc. Sec.*, 914F.3d87, 92-93 (2d Cir. 2019), which held that there was an apparent and unresolved conflict between a VE's testimony and the DOT. In *Lockwood,* the ALJ limited the claimant to no overhead reaching *bilaterally*, and the VE testified that the claimant could perform three jobs that, per the DOT, required either occasional or frequent reaching. *Id.* at 89-90. The *Lockwood* Court acknowledged that SSR 85-15 defines reaching as "extending the hands and arms in any direction," and reasonably concluded that an individual who could never reach overhead with either arm was incapable of "extending the hands and arms in any direction." *Id.* at 91-92 (citing SSR 85-15, 1985 WL 56857, at *7). The Second Circuit therefore concluded that there was an apparent and unresolved conflict between

---

[4] Per the DOT, the jobs of merchandise marker, office helper, and inspector and hand packager require frequent reaching. *See* DOT 209.587-034, 1991 WL 671802; DOT 239.567-010, 1991 WL 672232; DOT 559.687-074, 1991 WL 683797.

the VE's testimony that the three identified jobs could be performed by someone who was precluded from overhead reaching and the DOT, which indicated that each identified job required frequent or occasional reaching. *Id.* at 92.

However, the facts in the *Lockwood* case are distinguishable from the facts in this case. In *Lockwood,* the claimant was limited to no overhead reaching *bilaterally,* and therefore was incapable of reaching in all directions. *See Lockwood,* 914 F.3d at 89-92. In contrast, the ALJ here limited Plaintiff to frequent reaching in all directions except for occasional overhead reaching with the right arm, and found no reaching limitations with the left arm. (Tr. 1569). Thus, consistent with the jobs of merchandise marker, office helper, and inspector and hand packager, Plaintiff retained the ability to reach frequently "in all directions" with his left arm.

In *Colvin v. Berryhill,* 734 F. App'x 756, 759-60 (2d Cir. 2018)*,* the Second Circuit found no unresolved conflict where the ALJ found that Colvin could perform no fingering and occasional handling with his left hand, and the VE testified that Colvin could perform jobs that required either frequent handling or constant fingering per the DOT. *Id.* at 759-60 . The *Colvin* Court explained that there was no apparent conflict between the VE's testimony and the DOT because there was nothing in the DOT that indicated that the identified jobs required the ability to perform frequent/constant handling or fingering with *both* hands. *Id.* at 759. The Second Circuit reasoned that Colvin retained the ability to perform the jobs identified by the VE because she was able to perform unlimited fingering and handling with her right hand. *Id.* Thus, the Court determined that the VE's testimony did not conflict with the DOT. *Id.* at 759-60.

This case is analogous to the facts in *Colvin*. Here, there is nothing in the DOT that indicates that the jobs of merchandise marker, office helper, and inspector and hand packager require the ability to perform frequent reaching with *both* arms. *See* DOT 209.587-034, 1991 WL 671802; DOT 239.567-010, 1991 WL 672232; DOT 559.687-074, 1991 WL 683797. The ALJ determined that Plaintiff could frequently reach in all directions except for occasional overhead reaching with the right arm, and had no reaching limitations with the left arm. (Tr. 1569). Thus, consistent with the jobs of merchandise marker, office helper, and inspector and hand packager, Plaintiff retained the ability to reach frequently "in all directions" with his left arm. *See also John B. v. Comm'r of Soc. Sec.*, No. 19-CV-01113, 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021) ("Plaintiff's reliance on [*Lockwood*] is misplaced as that case involved an RFC excluding all overhead reaching tasks with both hands.... Unlike the facts in *Lockwood*, [the] RFC did not preclude plaintiff from all reaching but limited him to occasional overhead reaching with the right arm only."). Moreover, the VE confirmed that these jobs could be performed with reaching limitations in only one arm. *See* Tr. 1629-30, 1633. Specifically, the VE testified that, despite the DOT not making a distinction between having reaching limitations with either the dominant or non-dominant hand, an individual with Plaintiff's RFC and vocational characteristics could perform the jobs identified by the ALJ at step five. (Tr. 1633). The VE further testified that she based her testimony on her "professional experience and training," and her "analysis of the essential duties of the position cited." *Id.*

Accordingly, Plaintiff has not shown that there is an unresolved conflict warranting remand. The ALJ must therefore be affirmed.

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and defendant's motion for judgment on the pleadings (Dkt. No.15) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  September 23, 2025
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge